

Erik M. Bashian, Esq.
T: (516) 279-1554
F: (516) 213-0339
eb@bashpaplaw.com

*Admitted to Practice in NY, NJ and D.C.

VIA ECF

October 11, 2023

Hon. Arlene R. Lindsay
United States District Magistrate Judge
U.S. District Court of Eastern District of New York
Long Island Federal Courthouse
814 Federal Plaza
Central Islip, New York 11722-4451

Re:   Ivan Espinoza v. Calvert Manor Bagels Inc. and Ralph Facchini
      EDNY, Case No. 23-CV-4597 (GRB)(ARL)
      <u>Request for Settlement Approval</u>

Dear Judge Lindsay:

Plaintiff, Ivan Espinoza ("Plaintiff")[1] and Defendants, Calvert Manor Bagels Inc. ("Calvert Manor Bagels") and Ralph Facchini (collectively "Defendants") respectfully jointly request that Your Honor approve the settlement agreement reached in this matter, pursuant to *Cheeks v. Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015). A copy of the executed settlement agreement (the "Agreement") is annexed herein as **Exhibit A**.

### Settlement Amount

The Agreement resolves all claims brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), by payment to Plaintiff in the amount of $55,000.00. This settlement was reached through protracted arm's length negotiation between experienced legal counsel concerning the subject claims. As part of this motion, Plaintiff's counsel requests approval of an award of $18,150.00 in attorney's fees and costs, which is one third (1/3) of the

---

[1] On October 8, 2023, Defendants received information that, upon information and belief, Plaintiff passed away. Upon receipt of the foregoing information, Plaintiff's counsel made numerous efforts to confirm or deny this information about Plaintiff. Plaintiff's counsel has now been informed by Plaintiff's daughter that Plaintiff passed away over this past weekend. As per the settlement agreement, which pre-dates the Plaintiff's sudden passing, this action was fully settled by and between the parties subject to Court approval. As a result, we now submit this correspondence with the enclosed exhibits in hopes that we can finalize this matter and ensure that the settlement amount is properly issued to Plaintiff's next of kin or estate.

settlement amount and the remaining portion for out-of-pocket disbursements. For the reasons outlined below, the Court should approve the $55,000.00 settlement in this case as a fair and reasonable compromise of the claims against Defendants in this case.

## Factual Background

On June 21, 2023, Plaintiff commenced the instant action alleging that Defendants failed to pay all due overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), failure to pay spread of hours in violation of the NYLL and New York Commissioner of Labor, as well as failure to provide written notices required by NYLL. ECF Doc. # 1. Plaintiff was employed as a baker at the Defendants' bagel shop and bakery from December 2019 through the end of April 2023. *Id.* at ¶¶ 14-15. Plaintiff alleged that during his employ, he was paid weekly wages of $1,156.00. *Id.* at ¶ 20. Plaintiff further alleged that he "always worked 66 to 70 hours per week" except for the time between April 2020 through October 2020, when he alleged that he worked an average of 100 hours per week, or when he was out of work due to a health-related issue from May 29, 2022 through July 17, 2022. *Id.* at ¶¶ 18-19. Plaintiff claimed that during his employment Defendants failed to pay a premium (time and a half) for hours worked over 43 hours in a workweek, was not paid "spread of hours" when he worked 10 hours or more in a workday and was not provided with proper notice documentation, as required by the NYLL. *Id.* at ¶¶ 22, 24, 52.

Defendants filed their answer and affirmative defenses on July 14, 2023. ECF Doc. No. 6. Defendants have asserted multiple affirmative defenses, including the defense that Plaintiff's claims were barred, or minimally, damages should be reduced in whole or in part, by payments and loans Defendants made to Plaintiff during his employ which were not repaid by Plaintiff. *Id.* at Ninth Defense, ¶ 62. Specifically, Defendants claim that in April 2023 Plaintiff was provided with a $2,000 loan to repair his personal vehicle, which he never repaid. Plaintiff claims the $2,000 was not a loan—but a gift.

Over a protracted period, beginning in July 2023, counsel for the parties engaged in settlement discussions. Plaintiff's position was that despite payment by Defendants for hours worked up to 43 hours per week, he was owed unpaid overtime premium, at an hourly rate calculated by using his agreed upon hourly rate of $17.00; specifically, a premium of $8.50 for every overtime hour worked for a total overtime hourly wage due of $25.50, multiplied by a total of $2,154.84 alleged unpaid overtime hours worked for a total sum due of $54,948.42 (exclusive of liquidated damages, etc.). Plaintiff also alleged that he was due a spread of hours wage of $20,349.00 for this same period.

Defendants countered that they intend to defend this matter vigorously, and that Plaintiff was properly paid for all hours worked, including those limited instances when he worked in excess of 40 hours per week, Defendants contend that Plaintiff was paid overtime for those hours. Defendants' counsel communicated to Plaintiff's counsel that evidence would be provided showing that Plaintiff did not work the overtime hours he asserted, but in fact, had long periods of absence, and typically worked less than 40 hours per week. Because Defendants similarly

dispute Plaintiff's allegations concerning the hours he worked per shift, Defendants also intended to contest the spread of hours violations.

Although Defendants continue to take the position that Plaintiff is not owed anything, all parties acknowledge that they face risks of not being able to prevail on some or all of their claims and/or defenses if this case were to proceed to trial. The parties therefore reached an agreement whereby Defendants will pay Plaintiff the total sum of $55,000.00 to resolve this matter, inclusive of Plaintiff's legal fees and costs. **Exhibit "A."** The Agreement in this case contains a release by Plaintiff of all wage-related claims under the FLSA and NYLL and a mutual general release of all other non-wage related causes of action. The purpose of the mutual general release is to bring complete finality to the employment relationship between Plaintiff and his former employer, including the alleged loan. *See* Agreement § 3.2. Courts have approved such mutual general releases under similar circumstances. *See Souza v. 65 St. Marks Bistro*, 15 Civ. 327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 5, 2015) (Cott, M.J.) ("A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation. This result is consistent with the goals of a fair and just settlement."); *accord Cionca v. Interactive Realty*, LLC, 15 Civ. 5123 (BCM), 2016 WL 3440554, at *3-*4 (S.D.N.Y. June 10, 2016) (Moses, M.J.) ("As in *Souza*, the plaintiff here is no longer an employee of the defendants, reducing the danger that the release was obtained through improper job-related pressure. … Under these circumstances, a general release of the kind proposed in this case makes sense, in order to bring closure to both sides, and the Court finds it to be fair and reasonable."); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, D.J.).

As set forth more fully below, the parties respectfully submit that this settlement is fair, reasonable, and the product of arm's length negotiations. For these reasons and those set forth in further detail below, the settlement should be approved. Recovery of $55,000.00 is a substantial share of the amount Plaintiff claims to be owed, and certainly represents more than the alleged unpaid overtime wages that are due, particularly in a case wherein liability is contested. Moreover, due to Plaintiff's lack of documentary evidence in support of his allegations, continuing with litigation posed a significant risk to Plaintiff and his potential for a monetary recovery. Therefore, the parties respectfully request that this Court finds that the settlement amount is fair and reasonable.

## Fairness of the Settlement Agreement

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In evaluating the fairness of the agreement, the District Court may utilize the factors set forth by *Wolinsky,* 900 F. Supp. 2d 332, 335. Those factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

It is respectfully submitted that the proposed settlement agreement satisfies all *Wolinsky* factors, thus requiring court approval. As to the first factor, Plaintiff proposed net ultimate recovery (*after* deduction of legal fees) represents approximately 73% of his total alleged damages (exclusive of liquidated damages, etc.). *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving a settlement constituting 25% of the maximum possible recovery). Even absent the significant litigation risks in this case (discussed further below), this clearly represents a fair and reasonable settlement. As to the second factor, this agreement resolves a *bona fide* dispute over genuinely contested issues, including, most importantly the hours actually worked by Plaintiff. These are contested issues which will require significant litigation, attorney time, and expense. Plaintiff and Defendants believe that is in their best interests to resolve on the current terms rather than to be subject to protracted and expensive additional litigation, including the burdens and risks thereof.

Next, as to the third factor, the parties face serious litigation risks as to both liability and damages. Plaintiff risks the possibility that he was paid properly for the alleged unpaid overtime hours worked and was paid for the "spread of hours worked" due to a lack of documentary evidence, and entitled to nothing. Defendants risk having to pay more to Plaintiff than was agreed to herein, as well as unknown additional attorneys' fees to their own counsel, and if Plaintiff prevails, to Plaintiff's counsel as well. As to the fourth and fifth factors, the arm's length nature of the negotiations all weigh heavily in favor of *Cheeks* approval. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ("[T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement"); *Hernandez v. C-Penn Foods Inc.*, 2011 U.S. Dist. LEXIS 144798, at *2 (S.D.N.Y. Dec. 13, 2011) ("[G]iven the disputed issues of fact relating to Plaintiff's wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable.").

Request for Settlement Approval
October 11, 2023

Lastly, the mutual general release and mutual non-disparagement clauses in this Agreement are proper under *Cheeks*. Parties often settle a "wage-and-hour case hoping to achieve a resolution of all claims, including any other claims that they may have against each other (whether pled or unpled in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future." *Souza*, 2015 WL 7271747, at *5. The benefit of mutual general releases is that they "operate as a walk away provision" by "permit[ting] each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit." *Strauss v. Little Fish Corporation*, 2020 WL 4041511, at *5 (S.D.N.Y. July 17, 2020). So long as the release is mutual, district courts have even approved general releases that waive unasserted, unknown claims. *See Weng v. T&W Restaurant, Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (finding "general release" "releasing plaintiffs and defendants from liability for most claims each *might* have against the other" is "not unfair"); *Plizga v. Little Poland Restaurant, Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (approving "broad but mutual" releases that release "all claims" "for any matter, cause or thing whatsoever").

"General releases are permissible in FLSA settlements where [1] plaintiff is no longer employed by defendants, [2] the releases were negotiated by competent counsel for both sides and [3] the releases are mutual." *Khan v. Young Adult Institute, Inc.*, 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018). Here, Plaintiff no longer works for the Defendants, the Agreement was negotiated by competent counsel for both parties, and the general releases are mutual. *See, e.g.*, *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 556 (W.D.N.Y. Feb. 26, 2018) (finding "mutual general release provisions are a fair and reasonable outcome" where "Plaintiff is no longer an employee of Defendant"); *Plizga*, 2016 WL 9307474, at *6 (approving mutual general release where plaintiff "no longer works for the defendants"); *Cionca*, 2016 WL 3440554, at *4 (approving mutual general release where plaintiff "is no longer an employee of the defendants, reducing the danger that the release was obtained through improper job-related pressure"). For these reasons, the mutual general release should be approved.

Throughout the settlement negotiations, Defendants emphasized the importance of finality in this Agreement since Plaintiff is a former employee, and the mutual general release is required to serve that purpose from the Defendants' perspective.

### Attorney's Fees and Costs

"To aid a court in determining the reasonableness of proposed attorney's fees, counsel must submit evidence providing a factual basis for the award." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). "A court determining the portion of a FLSA settlement reasonably allocated to attorneys' fees may use either a 'lodestar' method or a 'percentage of the fund.'" *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 U.S. Dist. LEXIS 53339, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016).

When using a 'percentage of the fund' approach, "courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec.

5

14, 2015); *Thornhill v. CVS Pharm., Inc.*, 2014 U.S. Dist. LEXIS 37007, *3 (S.D.N.Y. 2014); *Briggs v. DPV Transp., Inc.*, 2021 U.S. Dist. LEXIS 245830, *5 (S.D.N.Y. 2021)("Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery"); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. 2013) (same).

In determining a reasonable award of attorneys' fees, a court should also consider traditional criteria such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Here, as permitted by the relevant retainer agreements, Plaintiff's counsel seeks 33% or 1/3 of the total recovered as a legal fee in this case, or $18,150.00. Plaintiff's counsel waives the right to recover anything additional as costs or disbursements. Because a one-third contingency fee is "commonly approved" in this Circuit, Plaintiff respectfully requests that the contingency fee in this case also be approved as fair and reasonable. Moreover, the instant civil action would have proven to be more complex than a traditional FLSA claim because neither party maintained full records that would indicate all hours worked by Plaintiff or payments of money. Further, significant risk was undertaken by Plaintiff's counsel by agreeing to accept Plaintiff's case on a contingency fee basis despite Plaintiff's lack of documentary proof of his hours worked in amount or by type.

Plaintiff was provided with quality representation by knowledgeable and experienced counsel who focuses his practice on wage and hour litigation. Moreover, the fee requested (33%) reasonably relates to the recovery and is reasonable when applying the percentage of the fund method for determining attorney's fees. Lastly, public policy favors early resolution of claims in order to avoid unnecessary waste of the resources of the Court and the parties. Thus, Plaintiff respectfully requests that the Court applies the percentage of the fund methodology and award $18,150.00 to Plaintiff's counsel in attorney's fees and costs.

The attorney's fees and costs sought by Plaintiff's counsel pursuant to the Settlement Agreement are equal to $18,150.00, which is 33% of the total recovery and is inclusive of costs incurred by Plaintiff's counsel. As set forth above, annexed hereto as **"Exhibit B"** is a true and accurate copy of contemporaneous time records for work expended by Plaintiff's counsel and costs incurred in this action. Throughout this action, Plaintiff has been represented by the undersigned, Erik M. Bashian, Esq. The undersigned, Mr. Bashian, has practiced law since February 2005 most recently focusing his practice primarily on Federal civil litigation, including wage and hour, unpaid overtime claims and class action litigation. When billing clients (both plaintiffs and defendants) on an hourly basis, Mr. Bashian generally bills at a rate of $400.00 to $450.00 per hour.

## Conclusion

For the foregoing reasons, counsel jointly and respectfully request that the Court approve the parties' settlement agreement as fair and reasonable and dismiss this action with prejudice. *See Reyes v. Altamarea Group, LLC*, 2011 U.S. Dist. LEXIS 115984, at *14-*17 (S.D.N.Y. 2011).

Thank you for the Court's time and attention to this matter.

Respectfully submitted,

**BASHIAN & PAPANTONIOU, P.C.**

/s/ Erik M. Bashian
Erik M. Bashian, Esq.

**BOND, SCHOENECK & KING, PLLC**

/s/ Samuel G. Dobre
Samuel G. Dobre, Esq.

Enc.

**Exhibit A**
**Settlement Agreement**

**Exhibit B**
**Time Records for Bashian & Papantoniou, P.C.**